A95A0857. NORTH DECATUR COURTYARDS CONDOMINIUM ASSOCIATION, INC. v. CASEY.
(458 SE2d 676)

ANDREWS, Judge.

North Decatur Courtyards Condominium Association (NDCCA) appeals the state court's order granting William Casey's motion for partial summary judgment and denying NDCCA's motion for partial summary judgment.

This case involves a dispute over the status of a lien placed on a condominium unit for unpaid condominium assessment fees. The issue is whether Casey, who acquired title to the condominium in question through foreclosure of a secondary purchase money mortgage, is liable for the unpaid assessments of the person foreclosed upon.

On June 28, 1990, Carrie Gray bought Unit 207B ("the unit") of North Decatur Courtyards from Harry Gaede. The warranty deed conveying the unit to Gray was dated June 28, 1990, and was recorded in the Deed Book in DeKalb County Records on July 30, 1990. Gaede took back a promissory note from Gray pursuant to a secondary purchase money mortgage on the unit. This secondary mortgage was also dated June 28, 1990, and was recorded on July 30, 1990, in the Deed Book in DeKalb County Records. Gaede assigned the promissory note and secondary mortgage to Casey on June 28, 1990. This assignment was recorded in the Deed Book in DeKalb County Records on August 20, 1990.

On May 7, 1991, Casey foreclosed on the secondary mortgage. Casey then bought the unit at the foreclosure sale that same month.

NDCCA sued Casey for the assessments which had become past due while Gray owned the unit. NDCCA contended that, although OCGA § 44-3-80 (f) states that anyone acquiring title to a unit as a result of foreclosure of a first priority mortgage or a secondary purchase money mortgage shall not be liable for any assessments past due at the time of foreclosure, OCGA § 44-3-109 (a) (4), as amended July 1, 1990, applied to this case.

OCGA § 44-3-109 (a) (4) provides that all assessments due and payable from the unit owner constitute a lien against the unit superior to all other liens, except "[t]he lien of any secondary purchase money mortgage covering the unit, provided that neither the grantee nor any successor grantee on the mortgage is the seller of the unit." The language "provided that neither the grantee nor any successor grantee on the mortgage is the seller of the unit" became effective as of July 1, 1990.

The trial court granted Casey's motion for partial summary judgment as to his liability for all assessments that became due prior to his foreclosing on the unit. The trial court found that OCGA § 44-3-109 (a) (4) did not apply in this case because the secondary purchase money mortgage was made prior to July 1, 1990. The court further found that OCGA § 44-3-80 (f) was applicable to this case, and therefore, Casey was not liable for any assessments that became due prior to the date he acquired title to the unit, nor was the unit subject to a lien for any assessment chargeable to the unit before Casey acquired title.

NDCCA cites the following enumerations of error in its appeal from the trial court's decision granting Casey's motion for partial summary judgment and denying its motion for partial summary judgment.

(a) NDCCA claims that the trial court's decision was erroneous in that it ignored the mandate of *Casey v. North Decatur Courtyards Condominium Assn.*, 213 Ga. App. 190 (444 SE2d 361) (1994).

(b) Secondly, NDCCA claims that the court erred in granting summary judgment by finding that OCGA § 44-3-80 (f) unmodified by and in isolation from OCGA § 44-3-109 (a) (4) is applicable to this case.

(c) NDCCA claims that the trial court erred by denying its motion for partial summary judgment which argued that Casey was liable for and the condominium unit was subject to a lien for the assessments chargeable to the subject unit for the period prior to foreclosure of the secondary purchase money mortgage originally made payable to the "seller of the unit."

1. NDCCA claims that because of this court's holding in *Casey*, supra, the trial court erred when it found that the date on which the mortgage was made was the effective date for purposes of determining whether the amended statute should apply. In *Casey*, the issue was whether or not Casey was liable for assessments which became due between March 22, 1990, when he sold the unit, and October 7, 1991, when he recorded the deed. This court affirmed the trial court's order granting NDCCA's motion for summary judgment as to Casey's liability. The court based its decision on the fact that the by-laws of the condominium association defined "owner" for purposes of determining who was liable for assessments, as "record title holder of a unit within the condominium, but shall not mean a mortgage holder." *Casey*, supra at 191. The court reasoned that it was necessary for the association to have a means of identifying who was liable for assessments in order to facilitate fee collection. Id.

But, as Casey correctly argues, that is not the issue in this case. There is no dispute as to who the owner of record of the unit was for the time period in question. Gray was the undisputed owner of record of the unit. Further, the issue in this case is whether an amendment to a statute is applicable to a secondary purchase money mortgage made before the amendment took effect, but not recorded until after the amendment's effective date. NDCCA argues that *Casey* states that public policy mandates allowing the recording date of the mortgage be the effective date so that associations can determine who will be liable for assessments.

NDCCA stretches the public policy dictum in *Casey* too far when it claims that because the case holds that the association was entitled to rely on the by-laws' definition of owner as the "record title holder" for purposes of assessment, the trial court in this case was required to find that the effective date of the secondary purchase money mortgage, for purposes of the statutory amendment, was the date it was recorded and not the date it was entered into. The facts in the previous case are totally different from these facts, and further, NDCCA's

main contention, a public policy argument, relies on dictum[1] and not the holding in that case. Accordingly, the trial court did not err in not following this court's decision in *Casey*, supra, when it granted Casey's motion for partial summary judgment.

2. Next, NDCCA contends that the trial court was in error when it found that the 1990 amendment to OCGA § 44-3-109 (a) (4) was not applicable in this case. As discussed above, NDCCA argues that the recording date of the secondary purchase money mortgage, July 30, and not the date on which the mortgage was made, June 28, is the operative date for determining whether OCGA § 44-3-109 (a) (4) applies in this case. NDCCA contends that public policy considerations require that the association be able to rely on the public record in order to determine liability for assessments. *Casey*, supra at 191. This court agreed that it was necessary for the association to be able to determine the record owner of the unit, as that was the person who was to be billed for the assessments. Id. But, in this case, the secondary purchase money mortgage was recorded before any of the assessments became overdue, and more than eight months before the foreclosure which created this issue. This is not a case about being able to determine who is liable for overdue assessments. The record owner is liable for the assessments. This case involves the determination of the priority of a lien on the unit, which, in turn, requires determining whether a statutory amendment is applicable or not.

On this issue, NDCCA cites to no legal theory for, or case law in support of, its contention that the effective date of the mortgage should be the date it was recorded and not the date it was signed. There is, however, case law to the contrary. "In examining a limitation over, we must look at it at the time the instrument creating the limitation takes effect. If by deed, then at the time the deed was made." *Lanier v. Lanier*, 218 Ga. 137, 140 (126 SE2d 776) (1962). A deed is valid between the original parties whether it is recorded or not. "It is only as against third persons, acting in good faith without notice, that recording is required." *Corbin v. Shadburn*, 49 Ga. App. 91 (174 SE 259) (1934). In this case, the mortgage was recorded prior to any overdue assessments or foreclosure, and there is no argument that NDCCA was acting without notice. Therefore, since NDCCA does not cite to any legal authority for their contention that the deed did not become effective for purposes of the statute until it was recorded, we find that the trial court did not err in finding that because the deed was made on June 28, 1990, OCGA § 44-3-109 (a) (4) does not apply in this case. Accordingly, the trial court did not err when it

---

[1] The opinion stated that, "[b]ecause of these policy concerns, associations must be able to rely on the public record to identify parties who are liable for the assessments." *Casey*, supra at 191.

granted Casey's motion for summary judgment.

3. Because of our holding in Division 1, we need not discuss the third enumeration of error.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JUNE 13, 1995 —
RECONSIDERATION DENIED JULY 6, 1995.

*Lipshutz, Greenblatt & King, Randall M. Lipshutz, Timothy L. Sitz*, for appellant.

*Storey & Obenschain, Stuart M. Neiman*, for appellee.